## SETTLEMENT AGREEMENT AND LIMITED LIABILITY RELEASE

**THIS SETTLEMENT AGREEMENT AND LIMITED LIABILITY RELEASE**
("Settlement Agreement") is entered into this _12_ day of _October_ 20_20_ by
Lindsay Pike ("Plaintiff"), Ironville Rail & Transfer, LLC, Midwest Terminals of Toledo,
International, Inc., Midwest Terminals of Toledo, Inc. and Trey Wilson  and Travelers
Property Casualty Company of America (the "Insurer").

## RECITALS

A.  On or about the 24th day of February, 2020, the Plaintiff filed a complaint in the
State Court of Gwinnett County, Georgia, Case No. 20-C-01336-S4, which was
removed on April 1, 2020 to the United States District Court, Northern District of
Georgia, Atlanta Division, Civil Action No. 4:20-CV-79-MHC (the "Action").  In the
Action, the Plaintiff alleges that she sustained injuries and damages because of certain
acts or omissions of the Defendants (hereinafter the "Occurrence").  In the Action, the
Plaintiff seeks to recover monetary damages on account of personal physical injuries
or physical sickness.

B.  Each Defendant is a party to the Action.

C.  The Insurer is the liability insurer of the Defendants and as such, would, subject to
all terms and conditions of the Insurer's policy, be obligated to pay any judgment
obtained against the Defendants which is covered by the policy.

D.  The parties desire to enter into this Settlement Agreement in order to provide for
certain payments in full settlement and discharge of all claims arising from or relating
to the Occurrence, upon the terms and conditions set forth herein, except to the extent
other insurance coverage is available that covers the Plaintiff's claims against
Defendants.

## AGREEMENT

The parties agree as follows:

## 1.0     Release and Discharge

     1.1     In consideration of the payments provided for in this Settlement
Agreement, Plaintiff hereby releases, acquits and forever discharges the Defendants
and the Insurer, except to the extent other insurance coverage is available that covers
the Plaintiff's claims against Defendants. Those parties released include the
Defendants' and the Insurer's respective past, present, and future officers, directors,
stockholders, attorneys, agents, principals, servants, representatives, employees,
heirs, executors, administrators, predecessors and successors in interest,



EXHIBIT A
Rev. 6/07

E
X

subsidiaries, affiliates, partners, privies, assigns, and insurers (including reinsurers) (all of the foregoing being hereinafter collectively referred to as the "Limited Releasees") from any and all claims, demands, actions, causes of action, damages, injuries, liabilities and costs (including attorneys' fees) whatsoever, of any and every kind and description, whether known or unknown, now existing or hereafter arising (all of the foregoing being hereinafter collectively referred to as "Claims/Liabilities") arising from, by reason of or in connection with the Occurrence, including but not limited to Claims/Liabilities based on tort, contract, wrongful death or any other common law or statutory cause of action or any violation of statutory or regulatory obligations, any Claims/Liabilities arising out of the sale and issuance of, coverage under, or investigation, handling and settlement of claims under any policy of insurance issued by any of the Limited Releasees and any Claims/Liabilities arising out of the negotiation, execution, delivery and performance of this Settlement Agreement or the purchase of an annuity contract by the Insurer or an Assignee, as provided in Section 4 below.  Each Plaintiff specifically agrees that the Defendants and the Insurer shall be released and discharged from any liability to any lienholder or subrogee  (including, but not limited to any state accident fund or injured worker's insurance fund), that may have any interest in amounts recovered by such Plaintiff with respect to the Occurrence and that any such lien or claim of subrogation will be satisfied and discharged solely from the amounts payable under Section 2 of this Settlement Agreement.

        1.2    Plaintiff acknowledges and agrees that the release and discharge set forth above is a limited liability release. **IT IS UNDERSTOOD AND AGREED** that this Limited Release is entered into pursuant to the provisions set forth in O.C.G.A. §33-24-41.1, and it is intended that the force and effect of this Limited Release shall be as intended by the aforesaid Code section.  This release shall operate as a full and final release of the insurance carrier from all injuries or damages to the Plaintiff arising out of the Accident and a release of the Limited Releasees except that this Limited Release shall not bar any claims the Undersigned has against the Limited Releasees to the extent other insurance coverage is available which covers the claim or claims of the Undersigned against the Limited Releasees. This Limited Release shall not operate as a release of any other persons or entities not specifically named herein and shall not operate as a release of the Undersigned's claim against any other tortfeasor or insurance carrier not named in this Limited Release. Plaintiff knowingly waives, and assumes the risk of, any and all claims of any nature whatsoever, which exist as of this date but which such Plaintiff does not know or suspect to exist, including without limitation claims which, if known, would have materially affected such Plaintiff's decision to enter into this Settlement Agreement.  Plaintiff hereby confirms that she understands that facts relating to the Occurrence may turn out to be other than or different from the facts now known or believed by such Plaintiff to be true; Plaintiff knowingly assumes that risk and acknowledges and agrees that this Settlement Agreement shall remain in effect and shall not be subject to termination or revocation by reason of any such different facts.

1.3     Plaintiff further agrees that Plaintiff has entered into this Settlement Agreement as a compromise and satisfaction of matters involving disputed issues of law and fact, except to the extent other insurance coverage is available.  All Parties stipulate that this Settlement Agreement is entered into in good faith as a compromise of a doubtful and disputed claim, and neither the payments provided for under Section 2 nor anything else contained in this Agreement may be construed as an admission of liability on the part of any Defendant, any such liability being expressly denied.

1.4     Plaintiff shall defend, indemnify and hold the Defendants and the Insurer harmless from and against (i) any and all claims, demands, actions, causes of action, damages and costs (including attorneys' fees) arising out of or by reason of the Occurrence that have been or may hereafter be brought by or on behalf of such Plaintiff against any party other than the Defendants and the Insurer, including without limitation, any state accident fund or injured worker's insurance fund; and (ii) any and all liens that may apply to the settlement provided for herein. Plaintiff and Limited Releasees agree that this indemnity and hold harmless obligation shall not apply to any claims for subrogation, reimbursement, or indemnity that any uninsured motorist carrier may bring against one or more Limited Releasees for reimbursement of amounts that such carrier may pay to Plaintiff pursuant to the uninsured motorist coverage available to her under any applicable policies of insurance.

1.5     Plaintiff agrees that if she files a lawsuit against anyone other than the Limited Releasees seeking recovery for damages as a result of the Occurrence or treatment of injuries arising out of the Occurrence and if, in that lawsuit a cross-claim or third party claim is brought against any Released Party, then this Settlement Agreement may be filed with the court as definitive evidence of the consent of such Plaintiff to have any verdict or judgment in favor of such Plaintiff reduced by the statutory pro rata share of such Released Party. Plaintiff and Limited Releasees agree that this paragraph shall not apply to any claims for subrogation, reimbursement, or indemnity that any uninsured motorist carrier may bring against one or more Limited Releasees for reimbursement of amounts that such carrier may pay to Plaintiff pursuant to the uninsured motorist coverage available to her under any applicable policies of insurance.

1.6     Plaintiff further covenants and agrees on her own behalf and for her successors, heirs, administrators, executors and permitted assigns, that if Plaintiff files a lawsuit or otherwise makes a claim against anyone other than the Limited Releasees for damages as a result of the Occurrence or treatment of injuries arising out of the Occurrence, and if as a result of that suit or claim, claims and/or demands are made against any of the Limited Releasees, Plaintiff will indemnify and save each of the Limited Releasees harmless from any and all claims, demands, actions, causes of action, damages and costs (including attorneys' fees) which any of the Limited Releasees incurs in defense of any such claims or demands or becomes obligated to pay to anyone as a result of the Occurrence or treatment of injuries arising out of the Occurrence, except that this indemnity and hold harmless provision shall not apply to any claims for subrogation, reimbursement, or indemnity that any uninsured motorist

carrier may bring against one or more Limited Releasees for reimbursement of amounts that such carrier may pay to Plaintiff pursuant to the uninsured motorist coverage available to her under any applicable policies of insurance.

1.7(a) Plaintiff, and Plaintiff's Counsel of Record for the consideration set forth in this Release Agreement, further agrees to satisfy any and all valid and enforceable liens or claims against the proceeds of this Agreement, specifically including, but not limited to, any lien, claim or conditional payment reimbursement demand asserted by or on behalf of Medicare or any entity claiming any right of reimbursement under the Medicare Secondary Payer Act. Plaintiff further agrees to hold harmless, indemnify and defend Defendants/Insurer from any valid and enforceable claims arising from the failure of Plaintiff to satisfy any such liens, claims, and/or Medicare conditional payment reimbursement demands. These obligations include Plaintiff's payment and/or reimbursement of any and all reasonable attorney's fees and expenses incurred by Defendants/Insurer in connection with the failure of Plaintiff to satisfy any such liens, claims, and/or Medicare conditional payment reimbursement demands.

1.7(b) Plaintiff also agrees to hold harmless, indemnify, and defend Defendants/Insurer with respect to any and all other claims that may be presented by Plaintiff, Medicare, and/or any other party acting on Plaintiff's or Medicare's behalf, including, but not limited to, administrative or civil fines, penalties, and interest, as well as any damages that arise out of, result from, and/or occur as a consequence of any adverse administrative or legal actions, up to and including the loss of Plaintiff's future Medicare benefits and/or Medicare eligibility. These obligations include Plaintiff's payment and/or reimbursement of any and all reasonable attorney's fees and expenses incurred by Defendants/Insurer in connection with the failure of Plaintiff to perform these obligations.

1.7(c)  The parties to this Release Agreement acknowledge that Plaintiff may choose to obtain a Medicare Set Aside Arrangement ("MSA") when Plaintiff's liability claims have been resolved. The parties further acknowledge that Defendants/Insurer has not provided any advice, legal or otherwise, as to whether such MSA is required, needed or warranted, or how it should be structured or funded. Plaintiff undertakes and acknowledges complete responsibility for the implementation of any such MSA. Plaintiff further agrees to hold harmless, indemnify, and defend Defendants/Insurer from any claims or liabilities arising out of or in any way connected with any such MSA, including any and all reasonable attorney's fees and expenses incurred by Defendants/Insurer in connection therewith.

1.7(d) The funding of this settlement agreement by the Defendants/Insurer is made in reliance on Plaintiff's agreement to fulfill the obligations set forth in paragraph 1.7(a), 1.7(b) and 1.7(c) above. The provisions of paragraph 1.7(a), 1.7(b) and 1.7(c) above shall survive the execution of this Settlement Agreement and shall be enforceable at any time in the future, and Plaintiff specifically agrees and acknowledges that any potential Statute of Limitations defense is waived forever with regard to the above-stated duty to hold harmless, indemnify and defend and shall be binding upon Plaintiff's heirs, successors and assigns.

**2.0**   **Payments**

In consideration of the release set forth above, the Insurer agrees to pay the following sums (which represents the full remaining liability limits under the applicable insurance policy available to Limited Releasees) in the manner described below:

a.   Payments due at the time of settlement as follows:

*$7,234,728.75 made payable to Lindsay Pike and her Attorneys*

*$1,622,681.17 made payable to MetLife Assignment Company, Inc. to fund Periodic payments as further detailed in Section 2.0 b. (1).*

*$1,025,680.68 made payable to BHG Structured Settlements, Inc. to fund Periodic payments as further detailed in Section 2.0 b. (2).*

b.   Periodic Payments made according to the following schedule (the "Periodic Payments") to the individual(s) designated below and, in the case of any payment to be made following the death of any such individual, to such individual's Contingent Beneficiary, as designated under Section 8 of this Settlement Agreement (each individual designated below and each such Contingent Beneficiary being hereinafter referred to as a "Payee"):

(1)   Payable to Lindsay Pike:

$8,968.94 payable monthly, guaranteed for 15 year(s), beginning on 11/15/2020, with the last guaranteed payment on 10/15/2035.

Payable to Medivest Benefit Advisors FBO Lindsay Pike:

$15,463.15 payable annually, guaranteed for 14 year(s), beginning on 01/15/2022, with the last guaranteed payment on 01/15/2035.

(2)   Payable to Lindsay Pike:

$8,975.24 payable monthly, guaranteed for 15 year(s), beginning on 11/15/2035, with the last guaranteed payment on 10/15/2050.

Payable to Medivest Benefit Advisors FBO Lindsay Pike:

$15,463.15 payable annually, guaranteed for 16 year(s), beginning on 01/15/2036, with the last guaranteed payment on 01/15/2051.

Periodic Payments to a Payee may be delayed if (i) such Payee fails to provide the Annuity Issuer with current address or banking information, as required under Section 4 of this Settlement Agreement, or (ii) if a Payee dies and the

Annuity Issuer does not receive appropriate written direction from the contingent beneficiary designated under Section 8 of this Settlement Agreement (including, if the contingent beneficiary is the estate of the deceased Payee, letters of appointment or equivalent proof of the authority of the executor, personal representative or administrator of the estate).

All payments provided for herein constitute damages on account of personal physical injuries and/or physical sickness, within the meaning of Section 104(a)(2) of the Internal Revenue Code of 1986, as amended.  Except for the Periodic Payments, all amounts specified above shall be due and payable not later than ten (10) business days after the effective date of this Settlement Agreement as determined under Section 17.0 below.

## 3.0   Modification or Transfer of Payment Rights

Plaintiff acknowledges and agrees that neither the Periodic Payments nor any rights thereto or interest therein (collectively, " Payment Rights") can be (i) accelerated, deferred, increased or decreased by such Plaintiff or any other Payee; or (ii) sold, assigned, pledged, hypothecated or otherwise transferred or encumbered, either directly or indirectly, by Plaintiff or Payee. Neither Plaintiff nor Payee shall have the power to effect, directly or indirectly, any such sale, assignment, pledge, hypothecation, transfer or encumbrance. Any purported sale, assignment, pledge, hypothecation, transfer or encumbrance of Payment Rights by Plaintiff or Payee shall be wholly void.

## 4.0   Annuity Purchase

4.1    The Insurer or, in the event of a qualified assignment (as provided in Section 5.1 below), the Assignee, may fund the obligation to make the Periodic Payments in Section 2.0 b.(1) through the purchase of an annuity contract from Metropolitan Tower Life Insurance Company(the "Annuity Issuer").  The Insurer or, if applicable, the Assignee shall be the sole owner of any such annuity contract and shall have all rights of ownership and control of such annuity contract.  The Insurer or the Assignee, as applicable, may have the Annuity Issuer mail payments directly to any Payee or deliver payments by electronic funds transfer to an insured deposit account in the Payee's name at an FDIC-insured institution in the United States.  Each Payee shall at all times keep the Annuity Issuer apprised of such Payee's current street address and telephone number and, if such Payee receives payments by electronic funds transfer, the name, address, bank identifier number (BIN) and telephone number of the Payee's depository institution and the account number of the Payee's account at such institution.

4.2    The Insurer or, in the event of a qualified assignment (as provided in Section 5.2 below), the Assignee, may fund the obligation to make the Periodic Payments in Section 2.0 b.(2) through the purchase of an annuity contract from Berkshire Hathaway Life Insurance Company of Nebraska (the "Annuity Issuer").  The

Insurer or, if applicable, the Assignee shall be the sole owner of any such annuity contract and shall have all rights of ownership and control of such annuity contract. The Insurer or the Assignee, as applicable, may have the Annuity Issuer mail payments directly to any Payee or deliver payments by electronic funds transfer to an insured deposit account in the Payee's name at an FDIC-insured institution in the United States.  Each Payee shall at all times keep the Annuity Issuer apprised of such Payee's current street address and telephone number and, if such Payee receives payments by electronic funds transfer, the name, address, bank identifier number (BIN) and telephone number of the Payee's depository institution and the account number of the Payee's account at such institution.

      4.3    Plaintiff is hereby notified that a portion of any money spent to purchase an annuity or other asset to fund a structured settlement may be used by the issuer of such annuity or other funding asset to pay commissions or other fees.

## 5.0    <u>Consent to Qualified Assignment</u>

      5.1    Plaintiff acknowledges and agrees that the Insurer may make a "qualified assignment," within the meaning of Section 130(c) of the Internal Revenue Code of 1986, as amended, of the obligation to make the Periodic Payments in Section 2.0 b. (1) to MetLife Assignment Company, Inc. (the "Assignee").  The Assignee's obligation for payment of the Periodic Payments shall be no greater than that of the Insurer immediately preceding the assignment of the Periodic Payments obligation.

      5.2    Plaintiff acknowledges and agrees that the Insurer may make a "qualified assignment," within the meaning of Section 130(c) of the Internal Revenue Code of 1986, as amended, of the obligation to make the Periodic Payments in Section 2.0 b. (2) to BHG Structured Settlements, Inc. (the "Assignee").  The Assignee's obligation for payment of the Periodic Payments shall be no greater than that of the Insurer immediately preceding the assignment of the Periodic Payments obligation.

      5.3    Any such assignment, if made, shall be accepted by Plaintiff without right of rejection and shall completely release and discharge the Insurer from any and all obligations to make the Periodic Payments. Plaintiff recognizes and acknowledges that in the event of such an assignment, the Insurer shall have no further obligation to make any of the Periodic Payments. If so requested by the Insurer, Plaintiff shall execute the qualified assignment to confirm Plaintiff's acceptance of the assignment and Plaintiff's release and discharge of the Insurer.

## 6.0    <u>Discharge of Obligation</u>

      The obligation of the Insurer or the Assignee to make each Periodic Payment to the Payee designated to receive such payment shall automatically be discharged upon the mailing of a valid check in the amount of such payment to the address of such Payee most recently designated pursuant to Section 4 of this Settlement Agreement or upon completion of an electronic funds transfer in the amount of such payment to the

deposit account of such Payee most recently designated pursuant to Section 4 of this Settlement Agreement.

**7.0    Attorneys' Fees**

Except for any payment of attorneys' fees provided for in Section 2.0 above, each party hereto shall be solely responsible for payment of such party's own attorneys' fees and costs in connection with the Occurrence, the Action, the negotiation, documentation and implementation of this Settlement Agreement, including without limitation the dismissal of the Action, and all other matters arising from or related to the Occurrence or the Action.

**8.0    Contingent Beneficiaries**

Any payments to be made after death of Lindsay Pike pursuant to the terms of this Settlement Agreement shall be made to such party (the "Contingent Beneficiary") as shall have been designated in writing to the Insurer or the Assignee, as applicable, by Lindsay Pike.  If no such Contingent Beneficiary has been designated, or if no such Contingent Beneficiary is living at the time of a Lindsay Pike's death, payments shall be made to the estate of Lindsay Pike.  No designation of a Contingent Beneficiary and no revocation of any such designation, shall be effective unless it is in writing, in a form acceptable to the Insurer or the Assignee, as applicable, duly executed by Lindsay Pike and delivered to the Assignee.  Unless otherwise expressly provided in this Settlement Agreement, any designation of a Contingent Beneficiary made by Lindsay Pike shall be deemed to be revocable, and no party designated as a Contingent Beneficiary by Lindsay Pike shall, by virtue of such designation, be deemed to have any cognizable interest in any Periodic Payments prior to the death of Lindsay Pike.

**9.0    Dismissal of Action; Court Approval of Settlement (if Required)**

The parties acknowledge that as a Limited Release, Plaintiff cannot dismiss her action unless and until she has exhausted all available uninsured motorist coverage. The parties agree that, upon the uninsured motorist coverage being exhausted through a settlement with the uninsured motorist carriers, Plaintiff will file a stipulation of dismissal without prejudice duly executed by such attorney(s) on behalf of the Plaintiff. If the uninsured motorist carriers agree to waive subrogation against the Limited Releasees, then Plaintiff will file a dismissal with prejudice. Plaintiff hereby acknowledges and confirms that she has authorized her attorney(s) to execute and deliver such stipulation on her behalf;  and Plaintiff hereby authorizes counsel for the Defendants and or the Insurer to file said dismissal with the court and enter it as matter of record.

**10.0    Warranty of Capacity to Execute Agreement**

Plaintiff represents and warrants that (i) except as otherwise specifically set forth herein no other person or entity has or has had any interest in the claims, demands, actions, or causes of actions referred to in this Settlement Agreement; (ii) Plaintiff has the sole right and exclusive authority to enter into this Settlement Agreement (including granting the releases provided for herein and receiving the payments specified for Plaintiff in Section 2); and (iii) Plaintiff has not sold, assigned, encumbered or otherwise transferred or conveyed to any other party any of the claims, demands, actions or causes of action referred to in this Settlement Agreement or any interest in any such claims, demands, actions or causes of action.

## 11.0   Entire Agreement; Binding Effect; Benefit of Agreement

This Settlement Agreement, together with any annuity contract purchased to fund the Periodic Payments and any qualified assignment made by the Insurer, constitutes the entire agreement between the Plaintiff and the Defendants and the Insurer with respect to the matters set forth herein, and it supersedes any and all prior oral or written agreements, commitments or understandings with respect to such matters. This Settlement Agreement shall be binding upon, shall inure to the benefit of and shall be enforceable only by, the parties hereto, any other person designated as a Payee hereunder, any Assignee (as defined in Section 5.1) and the respective successors, heirs, executors, administrators and permitted assigns of any of the foregoing.  No other person or entity shall have any rights under this Settlement Agreement or be entitled to bring any action to enforce any of its provisions.  The rights of any permitted assignee of any party shall be subject to all terms of this Settlement Agreement and any defense or claim in recoupment arising under or in connection with the Occurrence or this Settlement Agreement.

## 12.0   Legal and Tax Advice; Comprehension of Agreement

In entering into this Settlement Agreement, Plaintiff represents that she has relied solely upon the legal and tax advice of her own attorneys and other advisers, who are the attorneys and advisers of her choice, that the terms of this Settlement Agreement have been completely read and explained to Plaintiff by such attorneys and that such terms are fully understood and voluntarily accepted by Plaintiff.

## 13.0   Governing Law

This Settlement Agreement shall be governed by and interpreted in accordance with the internal laws of the State of Georgia.

## 14.0   Additional Documents

All parties agree to cooperate fully and to execute and deliver any and all supplementary documents and to take any and all additional actions which may be necessary or appropriate to give effect to the terms and intent of this Settlement Agreement.

**15.0   Payee Representative**

If at any time any Payee is for any reason legally incapable of acting on such Payee's own behalf, all notices, designations, or instruments required or permitted to be executed by or delivered to such Payee and all payments required to be made to such Payee may, without liability to the Defendants or the Insurer or any Assignee, be executed and delivered to or by, and paid to, any legal guardian, conservator, custodian, or trustee (any of the foregoing being hereinafter referred to as a "Representative") appointed to act for such Payee or with respect to such Payee's property.  All payments made to any Representative shall be held and applied by such Representative solely for the benefit of the Payee for whom such representative acts.

**16.0   Amendment**

This Settlement Agreement can be modified or amended only by an instrument in writing duly executed by each of the parties hereto and, if the Insurer has made a qualified assignment, by the Assignee.

**17.0   Effectiveness**

This Settlement Agreement shall become effective on the first date on which it has been executed by all of the parties; provided, however, that if the effectiveness and implementation of this Settlement Agreement, as it applies to any Plaintiff, requires the prior approval of a court, then this Settlement Agreement shall become effective at such time as it has been approved by order of the appropriate court and such order has become final and non-appealable.


**IN WITNESS WHEREOF,** the Parties hereto have duly executed this Settlement

Agreement in multiple counterparts.

Lindsay Pike

_Lindsay D Pike_   10/12/20

[Plaintiff's Signature]          [Date]

DARL H. CHAMPION JR.
NOTARY
EXPIRES
GEORGIA
Sept. 15, 2023
PUBLIC
COBB COUNTY

Signed before and witnessed By:
Darl Champion, Esq.

10

PLAINTIFFS ATTORNEY

_____   _____
[Attorney's Signature]            [Date]

Travelers Property Casualty Company of America

_____
                [Date]